FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA** 03 MAR -6  AM 11: 24
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL GILBERT, et al.,

    Plaintiffs,

vs.                            CASE NO. CV-01-J-3349-S

DISCOVERY CHANNEL STORE, INC.
d/b/a THE NATURE COMPANY, et al.,

**ENTERED**

    Defendants.

MAR   6 2003

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 23), evidence in support of said motion and a memorandum of law. The plaintiff submitted evidence and a brief in opposition to said motion (docs. 25 and 26). The defendant thereafter submitted a reply.

Plaintiffs commenced this action by filing a complaint alleging defendant Discovery Channel Store, Inc. ("Discovery Channel") discriminated against them on the basis of race (white) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and 42 U.S.C. § 1981.  The plaintiffs also brought a state law claim for intentional infliction of emotional distress against defendant Discovery Channel and against defendant Yvette Spence ("Spencer"), an individual. Upon consideration of the pleadings, memorandum of the defendants and evidentiary submissions, the court concludes that the motion for



summary judgment is due to be granted as no genuine issues of material fact remain and the defendants are entitled to judgment in their favor as a matter of law.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiffs, the court finds the facts of this case to be as follows:

Plaintiffs sue their employer, Discovery Store, plus the associate manager, Yvette Spencer, who is a black women.[1]  All three of the plaintiffs were assistant managers.  Higdon declaration,¶ 2.  The plaintiffs assert that Spencer went around stating she hated white people and also that she was hostile to other management members.[2]  Complaint at ¶ 8; Higdon declaration at ¶ 20; Gilbert depo. at 75-76; Doe depo. at 173.  Plaintiff Alan Hethcox ("Hethcox") testified that he never actually heard Spencer say she hated white people, but he heard other employees say she said this. Hethcox depo. at 128-129. The plaintiffs also assert that Spencer repeatedly violated company policy and was not terminated.  Plaintiffs' statement of facts, at facts 6-12.

---

[1]The store hierarchy was store manager, Lisa Rogers-Higdon, followed by the associate manager, Spencer, followed by assistant managers, of which there were several.  Each of the plaintiffs was an assistant manager.  The store manager, in turn, is under the Regional Business Development Manager. Lesli Gilbert.

[2]Another employee, Kristi Peterson, testified that Spencer said she was going to get rid of everyone in the store and take it over.  Peterson depo. at 14.  Melvin Honeycutt testified he heard Spencer state she was promised the store, she hated the white people that were there and she was going to do whatever it took to get it.  Honeycutt depo. at 14.  Apparently, there were huge tensions between Higdon and Spencer, making all the employees miserable.  Defendant Ex. 4 at 28.

Michael Gilbert ("Gilbert") had worked for Discovery Channel since October, 1993. Defendant Ex. 4 at 9. In the events leading up to Gilbert and Alan Hethcox's ("Hethcox") termination, Discovery Channel was having a promotion where, with the purchase of a ETX90 telescope, the defendant provided the customer a free tripod (a $199.95 value). Gilbert depo. at 197. On December 27, 2000, Gilbert sold two of the ETX90 telescopes to Hethcox, which included the free tripods. Immediately thereafter, Hethcox returned the two telescopes and bought two ETX 125 telescopes. While he paid the difference in price between the telescopes, the 125 telescopes did not include the tripods from the first purchase, but Hethcox kept them anyway. Discovery Channel asserts a memorandum specifically stated that the tripods could only be included for free with the ETX90 telescopes, but Gilbert states he never saw this memorandum. Lesli Gilbert declaration, ¶ 4. However, Gilbert agreed in his deposition that the promotion was not offered on the ETX125 telescope. Gilbert depo. at 234.

On January 4, 2001, Hethcox represented the original receipt for the first two (ETX90) telescopes, from which Gilbert credited Hethcox's credit card. See Defendant Ex. 3 at 15. Hethcox then repurchased one of the ETX125 telescopes on a different credit card, and the other ETX125 telescope through a combination of credit cards, travelers checks, and gift certificates. See Defendant Ex. 3 at 16-19. This was because Gilbert put the wrong amounts on each of the cards the first time around.

Defendant Ex. 3 at 26-27; Defendant Ex. 4 at 11-12; Hethcox depo. at 170-177, 182-183.

On January 5, 2001, the store manager, Lisa Higdon ("Higdon"), found the receipts for the January 4, 2001 transactions and notified Loss Prevention as well as Lesli Gilbert, the Regional Business Development Manager. Higdon declaration, ¶¶ 1, 3, 4; Lesli Gilbert declaration, ¶ 5. Lesli Gilbert asked for copies of the receipts and Hethcox gave them to her.[3] Hethcox depo. at 157. The store did not lose any money on these transactions. Defendant Ex. 4 at 7.

Lesli Gilbert stated her concerns with the above transactions were as follows:

1) Gilbert and Hethcox manipulated the promotion of the tripods to get tripods with telescopes that did not come with them.

2) Gilbert and Hethcox used the receipts from the return of the ETX90 telescopes to get an additional credit on Hethcox's credit card.

3) Gilbert should have gotten a second signature for the returns or exchanges according to store policy.

4) Only the first two telescope purchases reflect that an employee was making a purchase, which is required by store policy. However, Gilbert used a price override to give Hethcox the ten percent employee discount, rather than ringing it up as an

---

[3]The reciepts were submitted as Exhibit A to Lesli Gilbert's declaration.

employee purchase.  Lesli Gilbert decl., ¶¶14-17.  The defendant requires receipts for employee purchases to be kept in employee files.

Plaintiffs Gilbert and Hethcox assert that, because another store was giving the tripods away with the ETX125 telescopes, they could, through the Discovery Channel's price matching policy, also do so.  Gilbert depo. at 235; Defendant Ex. 3 at 10-11; Defendant. Ex. 4 at 11, 12.  After questions about the receipts arose, Higdon sent Spencer to check if the other store was indeed having such a promotion, and she reported "No" to Higdon.  Higdon declaration, ¶¶ 4-8.  Hethcox testified at his unemployment compensation hearing that, based on the other store's promotion, the Discovery Channel was selling the ETX125 telescopes to customers with the free tripod from the ETX90 telescope, just like he bought.[4]  Defendant Ex. 3, at 4-5, 23-24. Another employee echoed this.  Defendant Ex. 4 at 50.  Gilbert, Hethcox and Doe testified that they had inquired with the other store and were told that store was giving tripods away free with the purchase of the ETX125 telescopes.  Doe declaration, ¶¶ 3, 5; Gilbert depo. at 234-236.

According to Gilbert, the use of the original receipts for the credit and repurchase on January 4, 2001 was a mistake and they meant to use the exchange receipts, from Hethcox's return of the ETX90 and purchase of the ETC125 telescopes on January 4, 2001.  This was due to Hethcox wanting to change the credit cards used

---

[4]Hethcox testified he paid for the tripods the same day he was suspended.  Defendant Ex. 3 at 5; Hethcox depo. at 158.

to purchase the ETX125 telescopes, not defrauding the store. *See* Defendant Ex. 4 at 52. Hethcox did not determine that Gilbert had not correctly charged the two separate credit cards he used for these purchases until January 4, 2001.

Gilbert asserts he put the receipts from the January 4, 2001 transactions in the register and that they should have gone from there into in Hethcox's file. Because they were not in Hethcox's file, Gilbert accuses Spencer of taking them. Defendant Ex. 3 at 28-29. He states this because he thinks Spencer has been trying to run everybody out of the store. Defendant Ex. 3 at 30. Gilbert states he violated no company rules. Defendant Ex. 4 at 10.

Hethcox states Spencer was the one who determined from the receipts something was wrong. Defendant Ex. 3 at 5. This is echoed by Gilbert. Defendant Ex. 3 at 12. However, Higdon stated that she was the one who found the receipts and called Loss Prevention. Defendant Ex. 3 at 12-13; Lesli Gilbert declaration, ¶ 5; Higdon declaration, ¶ 1.

Lesli Gilbert instructed Higdon to put Hethcox and Gilbert on suspension on January 9, 2001 until an investigation was completed. Higdon declaration, ¶ 6; Lesli Gilbert declaration, ¶ 18. Spencer was present and spoke during this meeting. Higdon declaration, ¶ 6. Lesli Gilbert then made the decision to fire both Hethcox and Gilbert on January 10, 2001 for violation of company rules and falsifying company records. Higdon declaration, ¶ 7; Lesli Gilbert declaration, ¶ 19. Lesli Gilbert did not consider the plaintiffs' race nor consult with Spencer before making this determination. Lesli

Gilbert declaration, ¶ 20.  Spencer had no input into the decision to terminate them.
Higdon declaration, ¶ 11.

Both Gilbert and Hethcox state they were never told they were fired, but figured it out.  *See* defendant Ex. 4 at 14, 26.  Hethcox said he determined this from the woman at the unemployment compensation office, and Gilbert figured it out when he got a paycheck that included his vacation and holiday pay.  Defendant Ex. 4 at 17-19, 29; Hethcox depo. at 120-121.

The form completed by Higdon states Hethcox was fired for violation of company rules and dishonesty.  Defendant Ex. 3 at 13.  At Gilbert's unemployment compensation hearing, the hearing officer stated the def. said Gilbert was fired for a dishonest or criminal act.  Defendant Ex. 4 at 3.  A Discovery Channel memo shows that he was fired after consultation with Higdon.  Defendant Ex. 4 at 4-5.

Doe states that when Gilbert and Hethcox were fired, Spencer wanted to hire two blacks to replace them, but was told "no" by Business Development Manager, Shane Breazeale ("Breazeale").  Doe declaration, ¶ 11.

Doe's termination is unrelated to Gilbert and Hethcox's terminations. Doe gave a $20.00 "Save the Whales" adoption kit to a customer for free on August 4, 2001.  Doe depo. at 117.  Doe claims with large purchases, the store would throw in something small for free.  Doe depo. at 133-136.  He asserts he asked Spencer if it was all right to do on this occasion, and she said "yes."  Doe depo. at 136.  Doe claims Spencer then reported him to Breazeale.  Doe depo. at 248.  When Breazeale asked

him about it, Doe admitted he gave it away free, and Breazeale said he would be fired. Breazeale declaration, ¶¶ 2, 3; Doe depo. at 117-118. Doe then told Breazeale he had actually paid for it, which was untrue. Doe depo. at 119-120. Doe then admitted he was lying and was fired for stealing on August 6, 2001 by Breazeale. Doe depo. at 123, 168. Spencer had nothing to do with this decision. Higdon declaration, ¶ 13; Breazeale declaration, ¶ 3, 4. Breazeale did not consider Doe's race as they are both white. Breazeale declaration, ¶ 2. Doe states he was informed of his termination by Spencer and Lindsay Blechinger. Doe depo. at 114. Breazeale was on the telephone during this time. Doe depo. at 114. Doe states this was all motivated by Spencer trying to get rid of him because he was white, but that he did not mention this to Breazeale. Doe depo. at 129, 177.

Doe admits he was fired by Breazeale because Breazeale thought he was stealing. He testified in depostion that he does not think he was fired for racial reasons. Doe depo. at 178.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R. Civ.Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

Plaintiffs assert that the above facts constitute race discrimination under 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Whether this case is pursuant to 42 U.S.C. § 2000e or § 1981, the same substantive proof is required and analyzed under the same framework. *See e.g., Bass v. Board of County Com'rs, Orange County, Florida*, 256 F.3d 1095, 1109 n. 4 (11th Cir.2001); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). For a prima facie case, the plaintiffs must show that (1) they are members of a protected class; (2) they were subjected to an adverse

10

employment action; (3) the employer treated similarly situated employees outside the class more favorably; and (4) he was qualified to do his job. *See Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11ᵗʰ Cir.2000); *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11ᵗʰ Cir.2000). The plaintiffs must show similarly situated employees, who were not white males, where accused of similar misconduct, and not terminated. *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1311 (11ᵗʰ Cir.) as modified by 151 F.3d 1321 (11ᵗʰ Cir.1998). Plaintiffs are members of a protected class and they were terminated, which is an adverse employment action. They allege that Spencer, who is outside their protected class, was treated more favorably, as she engaged in misconduct and was not terminated. No one disputes that the plaintiffs were qualified for their jobs. The court finds that the plaintiffs arguably meet their prima facie burden.[5]

Discovery Store offered legitimate, non-discriminatory reasons for each of the plaintiffs' termination.[6] Each of the plaintiffs were each believed to be defrauding the

---

[5]Spencer, all three of the plaintiffs' comparator, allegedly engaged in misconduct for which Higdon believed she should have been terminated. Declaration of Higdon, ¶¶ 18-19. However, the court questions whether Spencer's conduct is similar enough for comparison purposes as she was not accused of actually misappropriating store property or funds. *See Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11ᵗʰ Cir.1999) ("The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed .... We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").

[6]Hethcox has no idea of who replaced him. Hethcox depo. at 229. Neither do Gilbert or Doe. Gilbert depo. at 177-178; Doe. depo. at 190

defendant.   Whether or not they actually stole or violated company policy is not material to the legitimateness of the defendant's belief that the conduct in question occurred.   This court may not second-guess employers' business decisions.   *Nix v. WLCY Radio/Rahall Comminications*, 738 F.2d 1181, 1187 (11th Cir. 1984).   The reason offered by an employer for an action "'does not have to be a reason that the judge or jurors would act on or approve' ... Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).

The plaintiffs have failed to produce any evidence that these reasons were pretextual.   Rather, Gilbert states he filed suit because he was accused of something he did not do.   Gilbert depo. at 178.   While the court sympathizes with the plaintiffs, unfair treatment, without discrimination, is not an unlawful employment practice under Title VII.   *See e.g., Coutu v. Martin County Brd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995).   Although Gilbert and Hethcox blame their terminations on Spencer, they also state they were terminated due to a misunderstanding about the telescope transactions.   Doe testified his termination had nothing to do with his race.

Additionally, in each case, Spencer was not the individual to make the decision to terminate the plaintiffs.   She had no input in Gilbert and Hethcox's termination. Plaintiffs allege she lied about the other store's promotion, but this did not directly cause their termination.   As to Doe, even if Spencer reported to Breazeale that he

gave something away after she approved it, Doe never told Breazeale that Spencer approved it.

The plaintiffs' claim also assert a claim in their complaint for intentional infliction of emotional distress, solely against Spencer.   The court has already determined from the evidence that Spencer had nothing to do with any of these terminations.  To prevail on this claim, the plaintiffs must show that 1) the defendant either intended to inflict emotional distress or should have known that such was likely to result from his or her conduct; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct caused emotional distress so severe no reasonable person could be expected to endure it.  *American Road Service Co v. Inmon*, 394 So.2d 361 (Ala.1980). *See also Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).  Plaintiffs have failed to show that Spencer had anything to do with any of their terminations.  Even if they did so, plaintiffs fail to establish, and the court knows of no cases which hold that termination from employment is within the realm of "outrageous conduct" as that term has been defined in Alabama. *See e.g., Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993) (limiting the tort of outrage to cases involving wrongful conduct related to burials, coercive settlement of insurance claims, or egregious sexual harassment).

Additionally, as the plaintiffs fail to address this claim at all in their response to the defendants' motion for summary judgment, the court finds this claim abandoned.

13

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiffs have failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motion for summary judgment is hereby **GRANTED**.  The plaintiffs' claims are **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE** and **ORDERED** this the _5_ day of March, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

14